THE ATLANTIC AND GEORGE'S CREEK CONSOLIDATED
COAL COMPANY, OF BALTIMORE CITY *vs.* THE MARY-
LAND COAL COMPANY, HENRY G. DAVIS and KATE
A. DAVIS, his Wife.

*Mistake—Injunction—Contract—Specific performance—Agen-
cy—Jurisdiction at law and in Equity—Trespass—License—
Estoppel—Quare clausum fregit—Boundaries—Measure of
Damages for Mining coal—Punitive Damages—Unwitting
trespasser.*

D. and the Maryland Coal Co., by deed of exchange conveyed to
each other certain adjoining parcels of coal land. D. afterwards
conveyed by deed to the Atlantic and George's Creek Consoli-
dated Coal Co., the same land obtained by him from the Maryland
Coal Co. Subsequently the M. C. Co. sued the A. and G. C. C. C.
Co. for mining coal on the land conveyed to the M. C. Co. by D.
Whereupon the A. and G. C. C. C. Co. filed a bill against the M.
C. Co. for an injunction to restrain the prosecution of said suit,
and for specific performance, and other relief. The A. and G. C.
C. C. Co. claimed that the land conveyed to D. did not contain the
quantity and quality of coal it was intended he should receive,
and that by mistake the land conveyed to D., as described in the
deed of exchange, did not include the *locus in quo*, and that by a
true location the alleged trespasses complained of in the suit at
law, were committed on the land that should have been originally
conveyed by the M. C. Co. to D. It was alleged by the complain-
ant that it had been agreed that the M. C. Co. by R., its agent,
should survey and lay off for D. the land to be conveyed to him,
and that in conducting its operations after the purchase from D.,
the boundaries of the land not being sufficiently marked by visible
calls in R.'s survey, S. the complainant's engineer, applied to R. to
show him the outlines, in order that no trespass might be com-
mitted, and that R., (since dead,) in the capacity of agent of the
M. C. Co., pointed out the lines, and that the coal which was the
subject of the action of trespass was taken within the lines of the
complainant's lands as so pointed out by R., and that if in fact
there was a trespass, it was due to the acts and statements of said

R. The mistake was denied by the M. C. Co. On appeal from an order dissolving a preliminary injunction which had been granted, it was HELD:

1st. That in such a case as this, averring a mistake to have been made in the deed of exchange, and setting up a verbal contract differing from the deed, (which expressed the consideration to be the exchange of the lands described therein,) and asking a specific performance of the verbal contract, the law was well settled that the terms of the contract must be accurately stated in the bill, and the proof must in every essential particular correspond with the terms of the contract thus set up.

2nd. That the contract set up by the complainant was not, upon the proof, satisfactorily made out.

3rd. That the question of R's agency, *vel non*, in making the alleged designation of boundaries to S., was clearly within the jurisdiction of the law Court to determine.

4th. That the effect of his acts, if they could be relied on by the complainant, would be in the nature of a defence under a license, or by way of estoppel, which were legal defences in an action of trespass, and could be set up in the suit at law, and to the extent of their legitimate protection could be made available in that suit.

5th. That as to their constituting a reason for equitable relief and injunction, on the ground that the M. C. Co. should be restrained from proceeding at law, because of the rule of damages which must there prevail, and that the Court of equity must take jurisdiction of the question of damages, giving only such as were measured by the value of the coal in its native bed; the Court knew of no principle for such jurisdiction on the facts of this case.

A Court of equity has no inherent power to ascertain the amount of damages by reason of tortious acts unattended by profits to the wrong-doer. There must be some joint interest, or interest in common of the parties in the property for a Court of equity to assess the damages.

In a case of trespass where no such relations exist, there is no ground upon which a Court of equity can set up any other rule of damages than that which prevails at law.

The right to maintain the action of *quare clausum fregit* exists in this State, whether the defendant committed the trespass unwittingly, or wilfully and wantonly.

The Atlantic, &c., Coal Co. *vs.* The Maryland Coal Co.

The owner of adjoining property is held to know the boundaries between him and his neighbor. If he has made a mistake *bona fide* as to his title or boundaries, in mining coal, the lowest measure of damages applicable is the value of the coal immediately upon its conversion into a chattel, without abatement of the cost of severance.

If the trespass has been committed through negligence or design, punitive damages in addition may be recovered.

An unwitting trespasser, merely as such, could not change the amount of his liability by simply changing the forum. No lower measure of damages for trespasses not negligent nor wilful could be substituted in equity for that fixed at law on general principles for such trespasses.

APPEAL from the Circuit Court for Allegany County, sitting in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Ferdinand Williams, Isidor Rayner,* and *J. H. Gordon,* for the appellant.

*R. T. Semmes,* and *William Walsh,* for the appellees.

RITCHIE, J., delivered the opinion of the Court.

On May 14th, 1872, Henry G. Davis and the Maryland Coal Company, by deed of exchange, conveyed to each other certain adjoining parcels of coal land lying in Allegany County. In October, 1872, the said Davis, by deed conveyed to the appellant the same land he had obtained from the appellee. In 1878 the appellee sued the appellant, in the Circuit Court for said county, for mining coal on the land conveyed to it by Davis as aforesaid. Thereupon the appellant filed its bill in this case to enjoin the

said suit and for specific performance and other relief. An injunction was issued as prayed, which, after testimony taken, was on motion of appellee dissolved; and from this action of the Court the present appeal was taken.

The appellant alleges in his bill that there was an agreement (in parol) between Davis and the Maryland Coal Company intended and supposed to be consummated in their deed of exchange, by which Davis was to convey his parcel of land containing one hundred and fifty acres, entirely underlaid with the big vein of coal in one solid body, and of good, merchantable quality, clear of outcrop, and to receive therefor a like number of acres of land, entirely underlaid by the said big vein of coal, and to contain a like quantity of coal of said big vein, acre for acre, in one·solid body of good, merchantable quality, and clear of outcrop, and that it was further agreed the said company by its agent, Robbins, should survey and lay off for Davis the land so to be conveyed to him; that said Robbins accordingly laid off a certain portion of land for Davis, and said Davis confiding in said Robbins, and supposing the land so laid off was in conformity with the agreement, united in the mutual conveyance by said deed of exchange. And further alleges that at the time of the execution of the deed to it from Davis, it was understood and agreed between it and Davis that he had in the land all the coal he was to obtain under his agreement with said Maryland Company, and that the deed from Davis was intended to convey to the appellant all the right, title and interest which he had by virtue of the said agreement between him and the Maryland Company. And further alleges that said Robbins was mistaken in his location of the land for Davis, and that by a true location the alleged trespasses complained of in the suit at law were on the land that should have been originally conveyed to Davis. It further alleges that in conducting its operations after the purchase from Davis, the boundaries of the land not be-

The Atlantic, &c., Coal Co. *vs.* The Maryland Coal Co.

ing sufficiently marked by visible calls in Robbins' survey, its engineer, John Sheridan, applied to Robbins to show him the outlines in order that no trespass might be committed, and that Robbins (now dead) in capacity of agent of the Maryland Company, pointed out the lines and informed him that he was still one hundred feet from the said company's land, and could extend his mining for that distance, and gave him a map of the lines as a guide; that Sheridan acted according to these directions; that no coal was dug by complainant beyond the boundaries so designated by Robbins and that the coal taken within these hundred feet is the subject of the action of trespass; and that if in fact there was trespass it was due to the acts and statements of the said Robbins. It further alleges that in the tract conveyed by the Maryland Coal Company to Davis there was but one hundred acres of the land underlaid by the kind and quality of coal to be conveyed him; and, moreover, that said company has excavated and worked out a large quantity of coal from the land that Davis should have gotten, and also at places on its own land, by which it is now disabled from conveying the stipulated quantity of coal in a solid body. The complainant then prays that a decree may be passed requiring said Maryland Coal Company to correct the mistake in the location made in its conveyance to Davis, by making another deed conveying to complainant the full quantity of one hundred and fifty acres of land, underlaid by the big vein of coal in a solid body, &c., and on failure to do so, to be required to make compensation to complainant, and further prays that said Maryland Company be compelled to account with complainant concerning said deficiency of coal, and the coal excavated by it as aforesaid; and prays an injunction to restrain appellee from further proceeding in said suit at law, and from seeking damages on the law side of the Court. The latter office of the injunction is based upon an averment in the

bill that the Maryland Coal Company is not entitled to so rigorous a rule upon the measure of damages as would be necessarily applied in the trespass suit, and should be confined in equity to a mere adjustment with complainant in an account between them, of the coal respectively taken or withheld by them, at a valuation of the coal in its native bed.

The answer of the appellee denies that it ever made the alleged agreement with Davis; avers that the deed of exchange expresses the only contract between them; denies that any mistake was made in the location; denies that Robbins, if he made the statement as to boundaries alleged to have been made to Sheridan, was acting as their agent in doing so ; and generally disputes the material allegations and averments of the bill, its right to the relief prayed, and objects to the jurisdiction of the Court of equity in the premises.

In the aforegoing statement, together with such introduction of the testimony as we shall have occasion to make, will be presented all of the case material to this decision.

The first question we shall consider is, whether it clearly appears from the proof that such an agreement was made between Davis and the Maryland Coal Company as the complainant sets up.

We concur with the Court below that it does not. The witnesses, Chamberlain on the one side, and Davis and Shaw on the other, the parties agreeing upon the exchange, differ in essential particulars as to what the contract was ; and considering their testimony together, the alleged agreement in substantial respects is not satisfactorily made out.

Not to recite their testimony at length, it is sufficient to note, (1) that Chamberlain does not testify that *all* the land to be exchanged was to contain the big vein of coal ; nor that there was to be any specific number of acres of big vein coal; nor that the coal was to be in one solid

body, clear of outcrop and all merchantable; but his statement is that each party was to get the same quantity of big vein coal and the same quantity of land. Such a contract would have been complied with, if each party had received an equal quantity of land and an equal quantity of coal, even if the coal was not co-extensive with the land, was not in a solid body and was partly made up of outcrop; (2) that Shaw does not state that the whole of the land to be conveyed by either party was to be entirely underlaid with the big vein, but that Robbins was appointed to ascertain the number of acres of big vein coal on Davis' land, and then to lay off a like number of acres of big vein coal on the Maryland Company's land, and one was to be given for the other, acre for acre, and to be free of outcrop. This statement of the agreement would require only a conveyance of so much of the land of either party as contained the big vein coal, free of outcrop, the exchange being limited by the quantity the party owning the smaller number of acres of such coal, was able to give. Shaw further testifies that at the time of the conveyance of Davis to appellant it was intended to convey all the land and coal we (Davis and Shaw, the legal title being in Davis) got from the Maryland Company in the exchange, and supposed we had done so; that we had no knowledge at that time of any deficiency, as Robbins had stated to me that what amount of coal we had in our lands he had given us; (3) Davis, when asked what the agreement was between him and the Maryland Coal Company, replies: "It was acre for acre, land which was *understood* to be all underlaid with the big vein coal." He does not say that the lands or coal were to be free of outcrop, nor that the land to be conveyed to him was to adjoin the lands of the Atlantic Coal Company.

In such a case as this, averring a mistake to have been made in the deed of exchange, and setting up a verbal contract differing from the deed, (which expresses the

consideration to be the exchange of the lands described therein) and asking a specific performance of the verbal contract; the law is well settled, that the terms of the contract must be accurately stated in the bill and the proof must in every essential particular correspond with the terms of the contract thus set up. *Semmes vs. Worthington, et al.,* 38 *Md.,* 318. It is also well established that any agreement to merit the interposition of a Court of equity to enforce it, must be certain in all its parts and *mutual;* to correct a mistake by one of the parties as to what the contract was, is not the ground of such interposition, but a mistake in the execution of an agreement clearly understood and entered into by both parties. *Griffith vs. Frederick Co. Bank, et al.,* 6 *G. & J.,* 424; *Gelston et al. vs. Sigmund,* 27 *Md.,* 334; *Shepherd vs. Shepherd,* 1 *Md. Chan. Dec.,* 244; 1 *Story's Eq.,* sec. 767. The contract set up by the appellant is not, we think, upon the proof, in the light of the principles recognized by the authorities cited, satisfactorily made out.

There are other grounds, however, not related to the alleged contract between Davis and the appellee, upon which complainant invokes the jurisdiction of the equity Court and its writ of injunction.

As to the allegations that Robbins was representing the Maryland Coal Company in his designation of the boundaries to Sheridan, should they be shown to have been on the appellee's land, and that if he erred the complainant committed the acts of mining sued upon in the trespass suit, in consequence of the acts and representations of Robbins; they involve simply the question of fact whether Robbins was or not the agent of the Maryland Company at the time; and the effect of such acts, if he were such agent, upon the appellee's right to recover in the trespass suit; and if such right exist, upon the measure of damages which should be applied. The question of Robbins' agency *vel non,* is clearly within the jurisdiction of the law

Court to determine. The effect of his acts, if they could be relied on by complainant, would be in the nature of a defence under a license or by way of estoppel. License and estoppel are legal defences in an action of trespass, and could be set up in the suit at law, and to the extent of their legitimate protection could be made available in that suit.

As to their constituting a reason for equitable relief and injunction on the ground that the appellant should be restrained from proceeding at law because of the rule of damages which must prevail, and that the Court of equity should take jurisdiction of the question of damages, giving only such as are measured by the value of the coal in its native bed; we know of no principle for such jurisdiction on the facts of this case.

A Court of equity has no inherent power to ascertain the amount of damages sustained by reason of tortious acts unattended with profits to the wrong-doer. *Kerr on Injunctions, Eng. Ed.,* 221. There must be some joint interest or interest in common of the parties in the property for a Court of Equity to assess the damages. In a case of trespass where no such relations exist, we are aware of no ground upon which a Court of equity can set up any other rule of damages than that which prevails at law. The rule for trespass in mining coal is well settled in Maryland. The right to maintain the action of *quare clausum fregit* exists in this State, whether the defendant committed the trespass unwittingly (as the complainant claims to have done) or wilfully and wantonly. The owner of adjoining property is held to know the boundaries between him and his neighbor. If he has made a mistake *bona fide* as to his title or boundaries in mining coal, the lowest measure of damages applicable, is, the value of the coal immediately upon its conversion into a chattel without abatement of the cost of severance. If the trespass has been committed through negligence or design, punitive damages in addi-

tion may be recovered. *Barton Coal Company vs. Cox and Cox Ex'rs, et al.,* 39 *Md.,* 1; *Franklin Coal Company vs. McMillan, et al.,* 49 *Md.,* 549; *Blaen Avon Coal Company, et al. vs. McCulloh,* 59 *Md.,* 403. An unwitting trespasser, merely as such, could not change the amount of his liability by simply changing the forum. No lower measure of damages for trespasses not negligent nor wilful, could be substituted in equity for that fixed at law, on general principles, for such trespasses. If a lower measure could be there applied merely because the trespasser was honestly mistaken, all such trespassers would seek the Courts of equity when sued, and thus evade the rule established as applicable to them in the aforegoing authorities.

As to what is the effect of bringing an action of trover instead of trespass *q. c. f.;* its bearing in estimating the damages recoverable; or in which of the two forms the appellee's suit at law was brought; are all questions clearly within the jurisdiction of the Court of law.

We are brought to the conclusion that the Court below committed no error in dissolving the injunction, and its order will therefore be affirmed.

*Order affirmed.*