SUPERIOR CONSTRUCTION COMPANY ET AL. *v.*
ELMO ET UX.

[No. 44, October Term, 1953.]

2

4

*Decided February 10, 1954.*

*Reargument ordered on question of punitive damages only February 10, 1954.*

*Opinion on Reargument filed April 29, 1954.**

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*W. Lee Harrison,* with whom was *Michael Paul Smith* on the brief, for the appellants at both argument and reargument.

---

* Reporter's Note: SOBELOFF, C.J., took no part in the consideration of the question reargued or the opinion filed thereon.

*Morris D. Hyman* and *Melvin J. Sykes,* with whom was *Melvin S. Silberg* on the brief, for the appellees at both argument and reargument.

SOBELOFF, C. J., delivered the opinion of the Court.

This suit was filed in the Circuit Court of Baltimore City by the appellees, owners of 1121 Overbrook Road, who occupied it as their home. It is situated on the Baltimore County side of the boundary line between Baltimore County and Baltimore City. The bill prayed an injunction against the appellant corporations and claimed damages for injury to the appellees' property caused by the debris, mud, and silt continually deposited on the appellees' property as a result of the appellants' large building operations on contiguous land in Baltimore City. The Chancellor found that the appellees were entitled to injunctive relief and, in addition, granted both compensatory and punitive damages. From the award of damages, the appellants appeal. They contest the jurisdiction of the Circuit Court of Baltimore City to award damages with respect to land in Baltimore County and they dispute the measure of damages adopted by the Chancellor.

The appellees' property consists of a rather large lot improved by a dwelling. A small stream ran through the rear of the property. The appellants' land sloped downward toward the stream which flowed through the low valley formed by the slope of the appellants' property on one side and the appellees' property on the other. Prior to the events complained of the appellants' property was covered with natural soil, sod and underbrush, and had trees on it. There was a gentle natural flow of water that came down the incline. In the course of the appellants' building operations, begun early in 1952 as a part of their plans for the erection of dwellings on a tract of some twenty-four acres, they cleared the protective growth and sod from their property and excavated and filled so as to materially increase the slope of the hill leading down to the stream. The Chancellor found,

"The flow of the water in its natural state has also been changed to the extent that the flow is quite different from what it formerly was. Formerly it was rain water that trickled down on the site through the underbrush, but now it has been converted into water that comes down from raw earth that has been piled on the defendant's land adjacent to the plaintiff's property very much higher than the elevation that previously existed, and as a result, in a hard rainfall this dirt is washed down and stones could be washed down if there were any stones there, and it forms mud and silt on the plaintiff's property." The Chancellor also found that appellants "intentionally and negligently dumped the entire load of excess drainage from its building operations" on appellees' property, and that the appellants "took no measures to alleviate in any degree the damage."

The appellees were forced to move from the property in July, 1952, and it was thereafter vacant at least until the hearing.

## I.

Appellants concede that an equity court of Baltimore City had the power to grant injunctive relief; but on the question of damages they contend that it was without jurisdiction because the property is situated in Baltimore County. They maintain that this is a local, as distinguished from a transitory, action and that it may properly be brought only in the County court. Appellees' answer is that appellants' contention challenges only the venue and that by their failure to make timely objection in the trial court to the bringing of a local action in a forum other than that of the *situs* of the subject matter they have waived the point.

The distinction between local and transitory actions still exists in Maryland, and equally well settled is the rule that an injury to real estate is local and not transitory, as the cause of action could not have originated in any other place. *Patterson v. Wilson*, 6 G. & J. 499; *Ireton. v. Mayor and City Council of Baltimore*, 61 Md. 432, 434; *Crook v. Pitcher*, 61 Md. 510; *Gunther v.*

*Dranbauer,* 86 Md. 1; *Guest v. Commissioners of Church Hill,* 90 Md. 689, 696; *Gusdorff v. Duncan,* 94 Md. 160; *Mayor and City Council of Baltimore City v. Meredith's Ford and Jarrettsville Turnpike Co.,* 104 Md. 351; *Phillips v. Mayor and City Council of Baltimore,* 110 Md. 431, 433.

The fact that the legislature deemed it necessary to enact Article 75, Section 160, 1951 Code (enacted in its present form by Acts of 1916, Chapter 617) to give jurisdiction under certain circumstances to a court sitting in a county (or Baltimore City) other than where the damaged real property is located strongly suggests recognition and continuing approval of the general rule that damages to real estate can be redressed only where the land lies.

Poe thus outlines the laying of venue in local actions in Maryland: "In the case of trespass to real property, where the party committing it shall remove from the county where the property lies, or can not be found in such county, suit may be brought against him in any county where he may be found [Art. 75, Sec. 160, 1951 Code]; but in all other cases the test of the jurisdiction is the *situs* of the property; and the venue must be averred and averred truly. If the declaration fails to allege the jurisdictional fact of the locality of the land, the defect may be availed of on demurrer." *1 Poe, Pleading and Practice at Law,* Sec. 728.

The proper mode of taking advantage of a defect in the averment that the real estate is located within the jurisdiction of the court in which the suit is brought would seem to be, in Maryland, by appropriate action in the trial court. Otherwise, the defect will be cured after verdict. On this very point, *Crook v. Pitcher, supra,* stated, in holding that the trial court had improperly overruled defendant's demurrer: "Where the action is local, and the suit is brought in another place, the proper mode of taking advantage of the defect is by demurrer, and unless the defendant demurs, the defect will be cured by the Statute of Jeofails, 16 & 17

Car. II." See also 2 *Alexander's British Statutes* (Coe's Ed.) .659 fn.

. The rationale of the language quoted is that the distinction between local and transitory actions does not touch the jurisdiction of a court but only determines the particular manner in which the jurisdiction should be exercised. *British South Africa Company v. Companhia de Mocambique*, (1893) A. C. 602, 619. While there is a minority view to the contrary, the rule in most jurisdictions is as above stated. 22 *Encyclopaedia of Pleading and Practice* 815, and cases there collected.

Our holding is that the Maryland rule is correctly stated in *Crook v. Pitcher, supra*, and that the decree cured any defects of venue. See Art. 5, Sec. 41, 1951 Code. We expressly avoid any intimation of our views had appellants made a timely objection to the authority of the trial court to adjudicate the issue of damages.

## II.

The Chancellor's decree awarded the appellees the total amount of $4,397.50. The Chancellor broke down his award into three distinct elements of damage:

(1) the cost of restoration, $2,760.00;

(2) the loss of use of the property, $637.50, which figure was arrived at by multiplying the minimum rental value of the property in its undamaged condition ($75.00 per month) by the 8-1/2 month period from July, 1952, when the appellees moved out, to the date of the last hearing, March 16, 1953; and

(3) punitive or exemplary damages in the amount of $1,000.00 in addition to the compensatory damages.

The appellants claim error in the assessment of each of these elements of damage.

With respect to the award of compensatory damages, appellants urge that a court of equity may not assess a greater measure of compensatory damages than the difference between the "before" and "after" value of

the property when the cost of repairs to real property is greater than that difference; that in the case at bar the only testimony before the Chancellor indicated that the cost of restoration exceeded the diminution in value; and that, in any event, no award based on a loss of rent should have been allowed.

The *Restatement of Torts*, Sec. 929, gives as the measure of damages for harm to land from past invasions:

"Where a person is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction in value, the damages include compensation for

(a) at the plaintiff's election
    i. the difference between the value of the land before the harm and the value after the harm or the cost of restoration which has been or may be reasonably incurred, or
    ii. if a separable portion of the land has been damaged, the loss in its value, and

(b) the loss of use of the land and

(c) discomfort and annoyance, in an action brought by the occupant."

Comment (b) further explains:

". . . If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm. This would be true, for example, if in trying the effect of explosives, a person were to create large pits upon the comparatively worthless land of another.

"On the other hand, where a building such as a homestead is used for a purpose personal

to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, where a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by the defendant's invasion."

We do not think the Maryland law differs materially from the rule set forth in the Restatement. In *Fine v. Beck*, 140 Md. 317, which involved a house damaged by fire between the date of the trustee's sale and ratification, this court said, "In actions of tort for injuries to real property the rule in Maryland is: Where the damaged property can be restored to the condition it was in before the injury, without cost disproportionate to the real injury, the cost of such restoration is the measure of damages. But where that is impracticable, then the difference between the value of the property before and after the injury is the correct measure. *Brown v. Werner*, 40 Md. 15; *Consolidated Gas Co. v. Getty*, 96 Md. 683; *Piedmont Coal Co. v. Kearney*, 114 Md. 496; *Mullan v. Belbin*, 130 Md. 313."

The rule takes a slightly different emphasis when the injury to a building renders it only of salvage value. *Mullan v. Hacker*, 187 Md. 261, dealt with a concrete block garage that sustained, due to the defendants' acts, a moving of the north wall three or four inches out of plumb, a cracking of the wall and a falling in of the roof. Judge Delaplaine said for this court: "There is no question that the measure of damages for property is the cost of restoring it, if it can be restored to the condition it was in before the injury without cost disproportionate to the injury; but where the cost of restoring is greater than diminution in the market value, the correct measure is the difference between the value of the property before the injury and after."

In the most recent case, *Levi v. Schwartz*, 201 Md. 575, the cost of restoration of a lawn by building a retaining wall was allowed.

Thus, we will not set aside the Chancellor's award of the cost of restoration unless it was disproportionate to the diminution in value. The Chancellor's finding was, "The damage to the plaintiff's property is of a temporary nature, and the cost of restoration is not disproportionate to the difference in value before and after." This finding is supported by the estimates of Messrs. Cox and Bradshaw, two experienced real estate appraisers who submitted reports at the request of the Chancellor, that the diminution of value was $2,916.30 and $3,253.00, respectively. The trial court accepted Bradshaw's estimated cost of restoration of $2,760.00. Appellants point to testimony of Mr. Bradshaw, on cross-examination, that they interpret as stating that the actual depreciation of the property in terms of market value was practically the same as his estimate of the cost of restoration or "probably less." This testimony, in the light of the whole record, or even standing alone, would not justify us in setting aside this element in the Chancellor's award of damages, for even if restoration cost slightly more than the diminution in value it does not appear disproportionate under the circumstances.

### III.

We think that the Chancellor did not exceed his power in awarding in addition $637.50 damages to the appellees for the loss of use of their property. This is one aspect of the compensatory damages set forth in Sec. 929 of the *Restatement of Torts*, quoted above. Comment (f) adds, "In addition to damages for the diminution of the value or other similiar elements of damage, the plaintiff is entitled to recover for the past or prospective loss of use caused by the defendant's wrong as far as this has not been included in the other elements of damage awarded to the plaintiff as stated in Sec. 931." The cited section indicates that the land-

owner is entitled to the rental value of the land even though he has suffered no harm through the deprivation as where he was not using the land at the time of the injury. See also *25 C. J. S. Damages*, Sec. 84.

It has been held by this Court that when personal property has been damaged, recovery is not limited to the cost of repair but may include the value of the use of the property during the time that it would take to repair it. *Fisher v. City Dairy Co.*, 137 Md. 601, 603. We perceive no reason for a different rule when the injury is to real property. *Commissioners of Aberdeen v. Bradford*, 94 Md. 670. Cf. *Lurssen v. Lloyd*, 76 Md. 360. While the landowner is entitled to but one satisfaction, he is entitled to have that satisfaction complete. When the landowner is deprived of occupancy and suffers the loss of rental value, complete satisfaction must take account of the loss of personal enjoyment and use, independently of and beyond the difference in market value or cost of restoration. *Mayor and City Council of Havre de Grace v. Maxa*, 177 Md. 168, 182. The case relied on by appellants, *B. & O. Railroad Co. v. Kahl*, 124 Md. 299, may be distinguished in the very words of the case: ". . . when that depreciation (in the value of real property) has been ascertained by using the rental value as a basis it represents the whole damages to which the plaintiff is entitled, and it would be manifestly unjust to super-add the loss of rent as an independent, and additional element of damages, as was done by the plaintiff's third prayer."

Appellees in this case are entitled to compensation for the loss of use of their property.

## IV.

The final element in the award was $1,000 as punitive or exemplary damages. Appellants contend that the Chancellor had no power to make this award.

The appellees counter, first, with Rule 9 of the Rules of the Court of Appeals, urging that appellants, not having made this objection below, cannot press it here.

Rule 9 incorporates *verbatim* the language of Art 5, Sec. 10, 1951 Code, which states, "In no case shall the Court of Appeals decide any point or question which does not plainly appear by the record to have been tried and decided by the Court below." The appellees say that the Chancellor's written memorandum on damages was submitted to counsel several days before the decree was signed and that appellants' failure then to raise objection to the allowance of punitive damages on the ground of lack of equity's power to award them is a bar to the objection in this Court. We are of the opinion, however, the appellees' contention seeks to over-extend the requirements of Rule 9 and Art. 5, Sec. 10, and that appellants were not under obligation when they received the Court's memorandum to make special objection to the item for punitive damages. The memorandum states the well considered opinion of the Chancellor on the question of damages, after he had the benefit of an extensive hearing on that point. Moreover, as the hearing had concluded and the distribution of the written memorandum was an informal courtesy, it is not apparent how the appellants came under an obligation at that point to except specifically to the award of damages or any item in it. Finally, Art. 5, Secs. 40, 41, 1951 Code, provide that on an appeal from a court of equity, no objection to the jurisdiction of the court, the competency of a witness, the admissibility of evidence, the sufficiency of the averments of the bill or petition, or to any account stated and reported in said cause shall be made in the Court of Appeals, unless it shall appear by the record that such objection was made by exceptions filed in the court from which such appeal shall have been taken. This leads to the conclusion that Rule 9 and Art. 5, Sec. 10, governing appeals from both law and equity, are not intended to bar review in the absence of an objection to a memorandum giving the reasons for a decree but rather are meant to deal with situations that may be objected to at the hearing.

In respect to the merits of the allowance, the question of the power of a court of equity to award punitive or exemplary damages has never been squarely decided in Maryland, although there have been expressions in various cases more or less pertinent to this issue. The Court desires further briefs and arguments on this point.

> *Decree affirmed except as to allowance of punitive damages; reargument ordered on the question of punitive. damages only; costs to be paid by appellants.*

## ON REARGUMENT

The cause was reargued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

HAMMOND, J., delivered the opinion of the Court.

In this case, the complainants sought and secured an injunction against further trespass to real property, as well as an award by the Chancellor of full compensatory damages, and of $1,000.00 as punitive damages. In an opinion heretofore filed, we affirmed the decree except as to the allowance of punitive damages, ordering reargument on that point.

It is conceded that the facts are such as would justify an award of punitive damages by a jury, if the case had been tried at law. The only question now to be determined is whether equity has inherent power to grant punitive damages, as incidental relief, as admittedly it has in case of compensatory awards. The *Restatement, Torts,* delineates the two. Compensatory damages are: ". . . the damages awarded to a person as compensation, indemnity or restitution for harm sustained by him." (Section 903). Punitive damages are those: ". . . other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct." (Section 908). Compensatory damages are

recoverable not only where they can be measured precisely but where the trier of the facts must, to the best of ability, estimate the harm which the one wronged has suffered; for example, for pain and suffering. The amount of compensatory damages may reflect the motive of the wrong-doer, and where the motive is bad in law, be increased without changing its character and becoming punitive. If one is entitled to judgment for conversion of a chattel, he may recover compensatory damages greater than the value of the thing taken; for example, its market value as a product manufactured or improved by the taker. *Restatement, Torts,* Section 927.

The liability of an innocent taker of minerals from the land of another ordinarily is measured by the value of the thing taken "in place"; that is to say, in the ground. The wilful pilferer must pay the value of the mineral when ready for market, or even the amount of the proceeds received by the wrong-doer, without recompense for the cost of labor and expenses. *Mt. Savage George's Creek Coal Co. v. Monahan,* 132 Md. 654, and cases cited; and Article 75, Section 98, Code (1951). These enhanced damages are generally held to be compensatory, not punitive. In addition, where the trespass is wilful, punitive damages may be recovered also. Often, by statute, double or treble damages are made payable to a wronged one and such damages are held to be punitive. *Cross v. McClenahan,* 54 Md. 21; *Porter v. Warner Holding Co.,* 328 U. S. 395, 90 L. Ed. 1332. Failure to distinguish between compensatory damages, although they take into account elements not susceptible of accurate measurement and may be enlarged because of motive or intentional violation of a legal duty, and true punitive damages, has caused some confusion as to what the cases have held, in that enlarged compensatory damages are either actually treated as, or later are thought to have been treated as, punitive. In the case at bar, there is no difficulty. Full compensatory damages were awarded. The extra $1,000.00 which the

Chancellor awarded was intended as, labelled as, and admittedly is entirely punitive in character.

The appellees say that since, admittedly, equity may award compensatory damages as incidental relief, it is entirely reasonable, and consistent with established principles, that it grant full relief in a proper case by awarding punitive as well as compensatory damages. They admit that the weight of authority is against their position, but say that the cases upon analysis show such a lack of reason and logic as make their holdings without real weight, and not to be followed. The reply of the appellants is that, historically and consistently, equity has refused to enforce penalties or forfeitures, that punitive damages are concededly penal in nature and inconsistent with equitable principles, which are *ex aequo et bono* and so permit only what is just and right, with no element of vengeance or punishment. This they say is only another way of expressing the idea that equity seeks to compel restitution and not to punish. There can be no doubt that the courts of this country, when asked whether, without statutory permission, equity can award punitive damages, have answered overwhelmingly that it could not. It has been so held by the Supreme Court, various Circuit Courts of Appeal, including those of the Second and Fourth Circuits, the Courts of many States, including New York and New Jersey, and the *Restatement.* The cases are set out in the note below (1). An early authority in this country is *Bird v. Wilmington*

---

(1) *Colburn v. Simms,* 2 Hare 543, 67 Eng. Rep. 224; *Livingston v. Woodworth,* 15 How. (U. S.) 546, 14 L. Ed. 809; *Stevens v. Gladding,* 17 How. (U. S.) 447, 15 L. Ed. 155; *Fleitmann v. Welsbach Street Lighting Co.,* 240 U. S. 27, 60 L. Ed. 505; *Porter v. Warner Holding Company,* 328 U. S. 395, 90 L. Ed. 1332; *Orenstein v. U. S.,* 191 F. 2d 184 (C. C. A. 1); *Decorative Stone Co. v. Building Trades Council,* 23 F. 2d 426 (C. C. A. 2); *Coca-Cola Co. v. Dixi-Cola Laboratories,* 155 F. 2d 59 (C. C. A. 4) cert. den. 329 U. S. 773, 91 L. Ed. 665; *Leimer v. Woods,* 196 F. 2d 828 (C. C. A. 8); *Williamson v. Chicago Mill & Lumber Corporation,* 59 F. 2d 918 (C. C. A. 8); *U. S. v. Bernard,* 202 F. 728 (C. C. A. 9); *U. S. v. Hart,* 86 F. Supp.

*and Manchester R. R. Co.,* (S. C.) 8 Rich. Equity 46, 64 Amer. Dec. 739. The Court held that an injunction would lie to restrain trespass to realty and that, as incidental relief, compensatory damage could be awarded in equity, but it added: ". . . but the plaintiff by applying in this Court, waives all claim for vindictive damages; . . ." A number of cases through the years have cited the *Bird* case and used similar language as to waiver.

The appellees' criticism of these cases is that they are examples of: ". . . the growth of irrational and unthoughtout doctrines by uncritical repetition of what starts out as in the *Bird* case as a casual, off-hand statement unsupported by authority or by discussion of reasons." They add that the statement that a plaintiff who applies to the equity court waives the right to punitive

787 (D. C. E. D. Va.); *U. S. v. Freidland,* 94 F. Supp. 828 (D. C. Conn.); *Hennessy v. Wilmerding-Loewe Co.,* 103 F. 90 (D. C. N. D. Cal.); *Taylor v. Ford Motor Car Co.,* 2 F. 2d 473 (D. C. Ill.); *Moore v. Carr,* 224 Ala. 275, 139 So. 269; *Littlejohn v. Grand International Brotherhood of Locomotive Engineers,* 92 Colo. 275, 20 P. 2d 311; *Fleischer v. James Drug Stores, Inc.,* 62 A. 2d 383 (N. J.); *Dunkel v. McDonald,* 298 N. Y. 586, 81 N. E. 2d 323; *Winthrop Chemical Co. v. Blackman,* 288 N. Y. S. 389, 159 N. Y. Misc. 451; *Mid-Continent Petroleum Corp. v. Bettis,* 180 Okla. 193, 69 P. 2d 346; *Bird v. Wilmington & Manchester R. R. Co.,* 8 Rich. Eq. (S. C.) 46; *Standard Warehouse Co. v. Atlantic Coast Line R. Co.,* 71 S. E. 2d 893 (S. C.); *Bush v. Gaffney,* 84 S. W. 2d 759 (Tex.); *Whitney v. Adams,* 66 Vt. 679, 30 A. 32, 25 L. R. A. 598, 44 Am. St. Rep. 875; *Given v. United Fuel Gas Co.,* 84 W. Va. 301, 99 S. E. 476; *Karns v. Allen,* 135 Wisc. 48, 115 N. W. 357. The *Restatement, Torts,* Ch. 47 at p. 534, in the Scope Note, states that the rules stated in the Chapter "are applicable to equitable proceedings in which damages are awarded for harm done". Since Sec. 903, which follows, defines compensatory damages as those "for harm sustained by him", and is contrasted with Sec. 908, which defines punitive damages as those awarded against a person "to punish him", the necessary inference is that it is not considered that equity award punitive damages. *Colburn v. Simms, supra,* was cited to the Court in *Livingston v. Woodworth, supra,* and was followed in *Stevens v. Gladding, supra,* as the basis of the opinion of the Supreme Court in that case.

damages is: ". . . a clasic of circular reasoning. It is a way of stating a result reached and not a reason for reaching it . . . merely another way of expressing the bare, unreasoned conclusion that equity should never award punitive damages." However, it is to be supposed that the Court in the *Bird* case was relying not only on a prior Supreme Court case (*Livingston v. Woodworth,* 15 How. 546, 14 L. Ed. 809), where it was held that equity, because of its basic principles, would not award punitive damages, but also on the English rule. In *Colburn v. Simms,* 2 Hare 543, 67 Eng. Rep. 224, the Vice-Chancellor, Sir James Wigram, after stating that an injunction had been granted against the invasion of a copyright and that it was sought to compel delivery of the unlawful copies, said that he knew of no case in which this had been done and, that without statutory authorization, it could not be done. He added: ". . . the question suggests itself, whether a Court of Equity will afford any assistance in giving effect. to a forfeiture, or, whether the parties ought not, so far as respects this claim, to be left to their remedies at law. The general rule undoubtedly is, that where a party seeking equitable relief is incidentally entitled to the benefit of a penalty or forfeiture, the Court requires him, as a condition of its assistance, to waive the penalty or forfeiture." This statement of the law is supported by *A Treatise on the Pleadings in Suits in the Court of Chancery, by English Bill*—By John Mitford, Esq.— (Lord Redesdale) 4th Ed. pp. 195-287. *Colburn v. Simms* was decided in 1843. It was cited to the Supreme Court in *Livingston v. Woodworth, supra,* which in turn was decided in 1853. The *Bird* case was decided in 1855. Clearly, there was precedent for its refusal of punitive damages in equity both on the waiver theory and on general equitable principles. It may well be that the waiver originally required in express terms later came to be conclusively presumed by the virtue of the filing in equity of a claim on which punitive damages might be recovered at law. (See *Story's Equity*

*Jurisprudence,* 14th Ed., Vol. 2, Sec. 1263). It is certainly clear that in the instant case, the complainants did not expect punitive damages at the time of the filing of the bill, since not only did they not ask for such damages but did not include a prayer for general relief. The damage prayer is this: "That the Complainants be awarded some sums of money that would compensate them for the damages and deterioration and depreciation to the value of their property." It is also worthy of note that the plaintiffs had a full and adequate alternative to relief in equity. Article 75, Sections 136-147, Code (1951), authorize the plaintiff, if the procedure specified be followed, to obtain in any action at law: ". . . an injunction forbidding the defendant to do, repeat or continue to do any act or acts that it is his duty to refrain from doing, either by contract or otherwise. . ." The language of the various sections makes it clear that the injunction they authorize in law would have the force and effect of an injunction issued by a court of equity and that damages and costs would be recoverable as in an ordinary action at law. *Poe, Pleading and Practice, Tiffany's Ed.,* Vol. 2, Sec. 334E. Certainly, it can be inferred with reason that a plaintiff, having a clear road which leads him to an injunction and desired punitive, as well as compensatory damages, who takes another road which leads him to the compensatory damages but not, in all reasonable probability, to the punitive damages, has waived the punitive damages. Particularly would this be so in a case where in terms he asked compensatory damages only. In the Wisconsin case of *Karns v. Allen,* 115 N. W. 357, the plaintiff had an election to sue at law or in equity, as in the present case. He chose to sue in equity and the Court said that thereby he had waived his right to exemplary damages to which he might have been entitled at law. Punitive damages may be waived at law, also. In 1909 the House of Lords held that such damages were not allowable in an action for wrongful dismissal of an employee, on the ground that damages allowable in tort were waived by suit on

the contract of employment. *Addis v. Gramophone Co.,* (1909) A. C. 488.

The appellees' criticism of the cases favorable to the appellants, which do not rest on the waiver theory but on the ground that a court of equity is a court of conscience which will not enforce penalties or forfeitures, or go beyond compensation, is that when a court of equity takes incidental jurisdiction over a purely legal claim to avoid multiplicity of suits, it is giving not equitable but legal relief, and is really sitting, *pro tanto,* as a court of law. The weakness in this argument is that when equity follows the law or avoids a multiplicity of suits by awarding damages, it is applying a permissive, not a mandatory, rule, one of convenience, which will be followed only as long as it is consistent with the underlying and fundamental principles of equity. The courts have not, as the appellees suggest, overlooked the rule that equity will, as incidental relief, award compensatory damages and in so doing, sit *pro tanto* as a court of law; they merely decline to extend that relief, for the reasons indicated, to include the award of punitive damages. In a number of cases, the court, as relief incidental to the granting of an injunction or other equitable remedy, has awarded compensatory damages, in some cases including enlarged compensatory damages for invasions to land, but has refused, after full consideration and discussion to extend the principle and award punitive damages, although the facts justified such an award had the action been at law. This has been in the face of the very arguments used by the appellees here and has been based on the fundamental ground that equity will permit only what is just and right with no element of vengeance. Examples of such cases, (all having been heretofore cited in Note (1),) are: *Williamson v. Chicago Mill & Lumber Corp.,* 59 F. 2d 918; *Livingston v. Woodworth, supra; Porter v. Warner Holding Co., supra;* and *United States v. Hart,* 86 F. Supp. 787.

The appellees rely on cases in three states, Mississippi, Tennessee and California, which are substantially all,

if not all, the authority in their favor. The first Mississippi case is *Hines v. Imperial Naval Stores Co.*, 58 So. 650. There the suit was for actual and punitive damages wrought by a trespasser who had boxed, and extracted trupentine and resin from pine trees on the complainant's land. Without citing authority the court held that punitive damages could be given. Actually the damages awarded seemed to have been enlarged compensatory damages of the kind customarily awarded in trespasses to land or the taking of products from land. In the second Mississippi case, *Neal v. Newburger Co.*, 123 So. 861, punitive damages, while sought, were not allowed so that the language of the court as to them is dictum. The first Tennessee case is *South Penn Oil Co. v. Stone*, decided by the Tennessee Court of Chancery Appeals and reported in 57 S. W. 374. It was held that punitive damages could be awarded against the complainant for a wilful abuse of the processes of the court; that is, obtaining an injunction by the use of false and reckless allegations. No authority was cited for the allowance of such damages in equity. The second Tennessee case, *Lichter v. Fulcher*, 125 S. W. 2d 501, was also decided by an intermediate court. The suit was against a contractors' association charging conspiracy to interfere with contracts. It was simply assumed that punitive damages could be allowed in equity. No authority was cited, not even the earlier Tennessee case. In California an intermediate Court of Appeals decided *Union Oil Co. v. Reconstruction Oil Co.*, 66 P. 2d 1215. In the action to enjoin the drilling of oil by a trespasser where the offender continued after the injunction, it was held that the rule of damages would be the same as if the suit were at law, and punitive damages could be awarded as incidental relief. It is clear from the opinion that the damages given were enlarged compensatory damages similar to those given in the coal cases in Maryland, and not punitive damages. Further, the court pointed out that while equity does not as a general rule award damages by way of punish-

ment, yet in California there is but one form of action under the code of civil procedure, the inference being that it made no difference on which side the damages were sought.

Equitable principles and the nature of punitive damages combine to convince us that the appellants are on sound ground when they assert that the general rule throughout the country is that, without benefit of statute, punitive damages may not be had in equity. We turn then to the authorities bearing on the Maryland view of the subject. In *Coca-Cola Co. v. Dixi-Cola Lab., Inc.*, 155 F. 2d 59, cited in Note (1), the Circuit Court of Appeals for the Fourth Circuit, on appeal from the District Court of Maryland, dealt with a case involving unfair competition and trade-mark infringement, wherein the appellant claimed that it was entitled to punitive damages. Speaking for the Court, Judge Soper, a distinguished Maryland lawyer and Judge, said: "In the absence of express statutory provision, a court of equity is without power to assess exemplary or punitive damages." He later referred again to the appellant's claim, adding: "In the absence of statute the function of a court of equity in the award of damages is confined to compensation and does not include the authority to award damages in the nature of a penalty; and hence one who appeals to a court of equity for relief waives vindictive damages. We find nothing in the decisions in Maryland, where the distinction between law and equity is preserved, at variance with the traditional view. It is taken for granted in the only Maryland case that has come to our attention where the point is mentioned. *Jacob Carmel et al. v. Jos. Lipnick et al.*, 3 Balto. City Reports, 475." The case to which Judge Soper refers was decided by former Chief Judge Carroll Bond when he was a member of the Supreme Bench of Baltimore City. In *Cross v. McClenahan, supra,* there was a bill for discovery and accounting of rent due, measured by the amount of stone taken from a quarry. It was sought to recover double the rent agreed upon by virtue of an

applicable statute, and it was admitted and held that this was a penalty. The Court said that in seeking to enforce the penalty: ". . . the appellant has gone to a tribunal that never enforces a penalty. It often relieves against a penalty. . . Here the appellant seeks a discovery, that he may have a decree for the penalty which the statute gives him. Such aid a court of equity will never give."

The first Maryland case on which the appellees rely is *Atlantic Coal Co. v. Maryland Coal Co.*, 62 Md. 135. The suit had been filed at law for trespass to coal lands with a claim for enlarged compensatory damages. The defendant in that suit filed a bill in equity to enjoin its prosecution on the ground that there had been an agreement as to the exchange of coal lands between the parties that had not been carried out and that the original defendant had been misled as to the true boundaries by the agent of the original plaintiff so that the trespass had been unintentional. The complainant in the equity case sets forth in its brief that the bill states a further ground of equitable relief in that the plaintiff in the law case was "claiming that not only the value of the coal so taken as it was found in the mine, but the additional value of it at the mouth of the mine, increased by the labor of the complainant, and at law there is no other measure of damages than the value of the coal when converted into a chattel, which would be unjust and inequitable in this case." In summary, the complainant in equity sought a correction of the mistake alleged as to the location of the boundary between the parties and the avoidance of the rule of law as to enhanced compensatory damages. There is no word in the pleadings or in the briefs of the parties as to punitive damages. The brief of the appellant says this, "Considering all the equities in this case, it would be unjust to permit the Maryland Company to claim the measure of damages allowed at law." Cited as illustrative of the measure of damages at law was *Barton Coal Co. v. Cox*, 39 Md. 1, where the discussion and the decision is as to enhanced

compensatory damages. The Court held that the defenses claimed by the complainant in equity could be set up at law and that equity lacked jurisdiction to ascertain the amount of damages sustained "by reason of tortious acts unattended by profits to the wrongdoer." It went on to say "In a case of trespass where no such relations exist, there is no ground upon which a court of equity can set up any other rule of damages than that which prevails at law." It is true that in discussing what the measure of damages was at law the Court pointed out that punitive damages could be recovered in a proper case. But what it actually decided was that "No lower measure of damages for trespass not negligent nor wilful could be substituted in equity for that fixed at law, on general principles, for such trespasses. If a lower measure could be there applied merely because the trespasser was honestly mistaken, all such trespassers would seek the courts of equity when sued, and thus avoid the rule established as applicable to them in the foregoing authorities." Clearly the Court did not even by dictum or indirection decide that equity had jurisdiction to award punitive damages.

The other Maryland case to which the appellees turn is *Mt. Savage George's Creek Coal Co. v. Monahan, supra.* The bill was against the coal company to enjoin trespassers and there were prayers to require the disclosure of coal already taken and allowance of damages equal to the profit made. The point actually decided was the effect of the passage of Ch. 287 of the Acts of 1894, now Article 75, Section 98, Code (1951), on the previous rule as to enlarged compensatory damages, where coal was taken in bad faith or with negligence. The Court held that the measure of damages provided by the statute was not materially different from that of the rule before its passage, except that there could not be deducted the cost of removing the coal from the mine if the trespass was: ". . . done furtively or in bad faith." As to the question of whether a different rule as to damages applied in equity, the opinion reveals that there was in the

case a stipulation between the parties as follows: ". . . 'the Court can pass upon the issues of this case the same as if it were a trial at law and the same as if the case were tried by the Court, sitting as a jury.'" The Court went on to say, in addition to that, that the *Atlantic Coal Co.* case led to the view that equity would apply the same measure as to damages as would a court at law and required the trespasser to pay compensatory damages, that is, a net price of $2.45 a ton rather than 10c a ton, the value of the coal in the beds, as it sought to do. It is clear, not only from the opinion, but from the pleadings and the briefs that punitive damages were in no way involved. The briefs discuss only the measure of compensatory damages, specifically using the phrase. The reference of the Court in the opinion to punitive damages was only to say in passing that the new statute would not, as such, bar them in a proper case.

Article 75, Sections 136-147, Code (1951), which, as we have noted, permit an injunction to be issued in suits at law, were passed as Ch. 456 of the Acts of 1888. It may well be that the passage of the Act came about as a result of the decision in the *Atlantic Coal Co.* case. The case was decided in 1884, after the Legislature had adjourned. When the next Legislature met in 1886, there was introduced House Bill No. 134, the provisions of which were substantially those of Sections 136-147. It passed the House but failed of passage in the Senate. See *House Journal for 1886,* pp. 794 and 1257, and *Senate Journal for 1886,* pp. 688 and 740. In 1888, the bill which had failed the previous session became law, having been introduced by the House Judiciary Committee. Mr. Poe, in his work on *Pleading and Practice,* Tiffany's Ed., Vol. 2, Section 334-E, refers to the Act of 1888 as "these liberal statutory provisions", and says that they should be freely invoked and applied in ordinary actions at law: ". . . as an easy mode of avoiding the necessity of separate and distinct proceedings, either by way of mandamus or injunction. . ." In enacting a liberal mode of procedure which would avoid separate and distinct

proceedings, two courses were open to the Legislature. It could have provided that in actions in equity damages could be recovered as incidental relief, as at law, or it could have done as it did and provide that in actions at law, incidental relief by injunction could be had. The course it chose lends no support to the position of the appellees but rather gives indication of a legislative belief that a court of equity did not have the power to award punitive damages and a legislative policy that it should not.

For the reasons we have set forth, to paraphrase the words of the Supreme Court in *Livingston v. Woodworth, supra,* we think that the provisions of the decree below for punitive damages: ". . . are warranted neither by the prayer of the bill . . . nor by the well-established rules of equity jurisprudence."

> *Provisions of the decree awarding punitive damages reversed. Costs incidental to the reargument shall be paid by the appellees.*