Frank E. FITZSIMMONS, as General Vice President of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of American, and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, an unincorporated association, Plaintiffs,

v.

WESTERN AIRLINES, INC., a Delaware corporation, and American Airlines, Inc., a Delaware corporation, Defendants.

Court of Chancery of Delaware, New Castle.

March 30, 1972.

\* Accordingly, defendant's motion to dismiss the complaint, made at the close of plaintiff's case, will be denied.

---

Bruce M. Stargatt, and Edward B. Maxwell, II, of Young, Conaway, Stargatt & Taylor, Wilmington, and Herbert A. Levy, and Angelo V. Arcadipane, Washington, D. C., for plaintiffs.

E. N. Carpenter, Jr., and Wendell Fenton, of Richards, Layton & Finger, Wilmington, Donald Keith Hall, of Darling, Hall, Rae & Gute, Los Angeles, Cal., and Joseph Barbash, of Debevoise, Plimpton, Lyons & Gates, New York City, for defendants.

DUFFY, Chancellor:

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Help-

ers of America (IBT), plaintiff, and Western Airlines, Inc. (Western), defendant, are parties to three collective bargaining agreements made pursuant to the Railway Labor Act, 45 U.S.C.A. § 151 et seq. These cover airline mechanics, utility/fleet service employees and store clerks. On December 17, 1970 Western and American Airlines, Inc. (American), defendant, voluntarily entered into an agreement providing for the merger of Western into American. Both defendants are common carriers by air engaged in interstate and foreign commerce. In March 1971 American announced that when the merger is consummated it will not recognize Western's collective bargaining agreements with IBT.

Plaintiffs seek (for themselves and for employees of Western) a declaratory judgment to the effect that the bargaining agreements survive the merger and will be binding upon American under 8 Del.C. § 259; plaintiffs also seek damages and injunctive relief.[1] Defendants have moved to dismiss the complaint on the grounds that the Court lacks jurisdiction over the subject matter and because it fails to state a claim upon which relief can be granted. This is the decision on that motion.

### A.

The merger has been approved by the stockholders of each company, but it is not yet legally permissible because approval of the Civil Aeronautics Board is required; approval of the President of the United States is also required because foreign air routes are involved. In a decision served on December 20, 1971 the Hearing Examiner for the CAB recommended that the merger not be approved.

■ Although merger of the two companies may never be a reality, I am satisfied that there is an actual controversy between IBT and defendants which presents a litigable issue within the meaning and purpose of our Declaratory Judgment Act, 10 Del.C. § 6501. And while defendants argue that the case offers no grounds for equity jurisdiction (tested by traditional Delaware standards), I am satisfied that the threatened breach of contract aspect of the dispute, with the right of plaintiff to injunctive relief if successful, brings the case within the principle announced and applied in Diebold Computer Leas., Inc. v. Commercial Cr. Corp., Del., 267 A.2d 586 (1970).[2] Compare Jefferson Chemical Co. v. Mobay Chemical Co., Del.Ch., 253 A.2d 512 (1969). While legal remedies may be available for any breach of the agreements, I cannot say as a matter of law that money damages (if ascertainable at all) would be adequate or sufficient under the circumstances offered here. It follows that, as between an action at law in a Delaware State Court and an action in this Equity Court, the case is rightly here.

■ Defendants argue also that this Court should decline jurisdiction over issues pending in the Western–IBT action in the District Court for the Central District of California. In that action Western asked for a declaration by the Court that it is under no legal duty to arbitrate certain

---

I. The planned merger and its impact upon the agreements between IBT and Western are also in litigation elsewhere: There are, *inter alia*, actions in the United States District Court for the District of Delaware, Prettner v. Aston, D.Del., 339 F.Supp. 273 (raising questions as to whether certain proxy materials were defective for failing to make disclosures about survival of the contracts) ; in the United States District Court for the Central District of California Western Airlines, Inc. v. International Brotherhood of Teamsters, etc. (to enforce arbitration agreements) ; and there is an action in the United States Court of Appeals for the District of Columbia, Fitzsimmons v. Civil Aeronautics Board (to review an order of the CAB). There is also a proceeding before CAB on the merits of the merger.

2. I emphasize, at this point, what the Court said in *Diebold*: equity will take jurisdiction if a defendant "has manifested an intent to act, even though it is not clear at the outset whether the action which the defendant is about to take is in violation of the contract."

alleged grievances; IBT counterclaimed for an order requiring Western to process the grievances and to arbitrate them. There may be some overlapping of issues in the cases, as there may well be in all of the forums in which the parties are at war, but I view this action as one to locate the Delaware corporation law in the battle. And I do not regard the issues raised in the California pleading as a sufficient basis for declining jurisdiction in this action which seeks a declaration of rights and duties under our law as it applies to the proposed merger.

## B.

Before discussing other jurisdictional arguments of defendants, I next consider the Delaware corporation law which plaintiffs say is the basis for the complaint. Defendants say that it has no application to the question of whether a labor contract survives a merger between two airlines.

8 Del.C. § 259 provides:

"(a) When any merger . . . shall have become effective under this chapter, for all purposes of the laws of this State the separate existence of all the constituent corporations . . . shall cease and the constituent [corporation] . . . shall . . . be merged into one of such corporations . . . possessing all the rights, privileges, powers and franchises as well of a public as of a private nature, and being subject to all the restrictions, disabilities and duties of each of such corporations so merged or consolidated; . . . and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."

The merger agreement between American and Western tracks the statute by stating:

"Section *7. Certain Effects of the Merger.* On the effective date of the merger, all the rights, privileges, powers and franchises, as well of a public as of a private nature, of each of the Constituent Corporations shall be possessed by the Surviving Corporation (the name of which shall be American Airlines, Inc.), subject to all the restrictions, disabilities and duties of each of the . . . Constituent Corporations . . . and all debts, liabilities and duties of the respective Constituent Corporations shall upon the effective date of the merger attach to the Surviving Corporation, and may be enforced against it to the same extent as if such debts, liabilities and duties had been incurred or contracted by it."

It is thus a matter of statutory law that a Delaware corporation may not avoid its contractual obligations by merger; those duties "attach" to the surviving corporation and may be "enforced against it." In short, the survivor must assume the obligations of the constituent.

The statute is broad and certainly does not exclude from its purview a duty arising from a contract with a union. And Federal law is the same. In John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Supreme Court said:

"We hold that the disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with the union does not automatically terminate all rights of the employees covered by the agreement, and that, in appropriate circumstances, present here, the successor employer may be required to arbitrate with the union under the agreement."

That was a Labor Management Relations Act case but the ruling is equally applicable to a Railway Labor Act case.

■ Under Delaware corporation law, the rights of Western's employees, who are covered by collective bargaining contracts between Western and the union, will not be automatically terminated by merger of

Western with American. And nothing in *Wiley* is inconsistent with this conclusion.

## C.

Defendants argue that this Court lacks jurisdiction over the action because it is, in reality, a union representation dispute which is within the exclusive jurisdiction of the National Mediation Board. Plaintiffs contend that the controversy concerns the duty of a surviving corporation to honor the contract of a corporation which vanishes in a merger.

### (1)

■ I first consider this Court's jurisdiction in the contract aspect of the dispute.

The Railway Labor Act was passed in 1926 to regulate the labor relations of the railroads and, in 1936, it was made applicable to "every common carrier by air engaged in interstate or foreign commerce." 45 U.S.C.A. §§ 181–188; International Ass'n. of Mach. AFL–CIO v. Central Airlines, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed. 2d 67 (1963). The Act establishes exclusive jurisdiction in the National Mediation Board over representation disputes and disputes concerning the meaning of collective bargaining agreements. Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Brotherhood of Railway & S. S. Clerks v. United Airlines, 6 Cir., 325 F.2d 576 (1963); Cert. dismissed, 379 U.S. 26, 85 S.Ct. 183, 13 L.Ed.2d 173 (1964).

But I find nothing in the Railway Labor Act nor in the Federal cases I have seen which purports to confer exclusive jurisdiction of a contract controversy on the Federal courts. On the contrary, the general principles of concurrent (Federal and state) jurisdiction and cases under the Labor Management Relations Act of 1947 strongly suggest that there is subject matter jurisdiction in a state court. Thus in Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962) the Supreme Court said that "nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law." And it added this:

"To hold that § 301(a) operates to deprive the state courts of a substantial segment of their established jurisdiction over contract actions would thus be to disregard this consistent history of hospitable acceptance of concurrent jurisdiction."

That view has been consistently followed by the Supreme Court in upholding the right of a state court to adjudicate contractual differences between an employer and a union which arise in an area regulated by Federal law. In Local 174 Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) the Court said:

"One of those issues—whether § 301 (a) of the Labor Management Relations Act of 1947 deprives state courts of jurisdiction over litigation such as this—we have decided this Term in Charles Dowd Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483. For the reasons stated in our opinion in that case, we hold that the Washington Supreme Court was correct in ruling that it had jurisdiction over this controversy."

It later commented on both *Dowd* and *Lucas* in Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), saying

"Lucas Flour and Dowd Box, as well as the later Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462, were suits upon collective bargaining contracts brought or held to arise under § 301 of the Labor Management Relations Act and in these cases the jurisdiction of the courts was sustained although it was seriously urged that the conduct involved was arguably protected or prohibited by the National Labor Relations Act and therefore with-

in the exclusive jurisdiction of the National Labor Relations Board. In Lucas Flour as well as in Atkinson the Court expressly refused to apply the pre-emption doctrine of the Garmon case; and we likewise reject that doctrine here where the alleged conduct of the employer, not only arguably, but concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board. The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301. If, as respondent strongly urges, there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise. This is not one of them, in our view, and the National Labor Relations Board is in accord."

In view of the explicit language in § 301(a) of the Labor Management Relations Act of 1947 there is a stronger case for exclusive jurisdiction of the Federal courts than there is under the Railway Labor Act.[3] But in Dowd and the cases which followed the Supreme Court has consistently held that a state court has concurrent jurisdiction of a contract dispute, even though the parties and their relationship may be governed by Federal law. I regard that as precedent for the ruling in this case.

To the extent that defendants argue that this Court is without subject matter jurisdiction to consider a controversy arising out of a contract between an airline and a union, that argument is without merit, even though the parties are subject to the Railway Labor Act.

(2)

■ I turn now to defendants' argument that this case is a union representation dispute over which the Court does not have jurisdiction.

Plaintiffs disclaim any interest in having this Court determine their rights to represent Western employees after the merger. But it is difficult to understand how the Court could, at this time, declare rights under the contracts without either defining the position of IBT and/or attempting to apply its injunctive power to the post-merger relationship between American and former Western employees. Consider, for example, these facts:

IBT is the exclusive bargaining agent for 1,332 airline mechanics, 439 utility/fleet service personnel and 120 stock clerks employed by Western. American has about 5,411 airline mechanics, 5,448 utility/fleet service personnel and 670 stock clerks; all are represented by the Transport Workers Union of America (TWU) which is certified as the exclusive bargaining agent.

■ I think it plain that the post-merger relationship of American with either union, or both of them, is a matter peculiarly within the exclusive jurisdiction of the National Mediation Board. Brotherhood of Railway & S. S. Clerks v. United Airlines, supra. And it would indeed be unwise for this Court to declare rights on the general basis now sought by plaintiffs before the proper Federal agency has determined what is to be done in the operation or conduct of American's business. The statutory scheme, governed by and administered exclusively under Federal law, requires that after merger (as before) American bargain and/or treat only with the union which represents a majority of its employees in each craft. For present pur-

3. § 301(a) states:
"Suits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States hav- ing jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

poses, that is TWU. Accommodations which may be required to integrate Western employees into the seniority, pay scale, check-off, welfare fund and similar provisions of the American labor contracts must be made by the Federal agencies, not by this Court. And while I regard IBT's disclaimer of a right to representation as made in good faith, who shall represent and act for the employees in these matters is inseparable, for present purposes, from the remainder of the contracts.

In short, I agree with defendants that this case necessarily involves a union representation dispute, but it does not follow that the complaint must be dismissed.

### D.

I have determined that both Federal and Delaware law require the surviving corporation to assume the duties of a constituent corporation in the merger. But to say this is not to say what those duties are. In other words, the duties which "attach" cannot, under the circumstances of this case, be determined by simply substituting "American" for "Western" in the labor contracts with IBT. The fact of merger brings new facts which must be considered including the rights of TWU and the employees it represents, and the application of Federal law to the post-merger operations of American. I have determined also that the case cannot be regarded entirely as a contract dispute, as the IBT contends, nor as simply the representation question which defendants say it is.

This analysis leads to the question of who shall say what the duties are that may be enforced against American after the merger. In what forum are those to be fixed in the first instance? Plaintiffs argue that this Court can and should fix them in a way that is consonant with the supremacy of Federal law in the regulation of the relation between the airlines and their employees. But I reach a different conclusion.

As I have indicated, it seems to me that what duties are imposed cannot be decided simply under general principles of either contract or corporate law. The duties which attach and which are enforceable are inseparable from the operation of the airline itself. And the operation of the airline and its employee relations are governed by Federal law and regulation; and there are Federal agencies which make determinations as to these. The function of this Court, as I see it, is to step aside until that is completed and then consider any application under § 259 to enforce the duties and/or to determine any aspect of the contract dispute which remains unsettled.

I also note, as Judge Stapleton observed in the related case of Prettner v. Aston, D.Del., 339 F.Supp. 273 (1972), that during the last ten years sixteen airline mergers have been approved by the CAB and, in each case, approval has been conditioned upon acceptance by the surviving carrier of labor protection provisions in the form adopted in the United-Capitol Merger Case, 33 CAB 307, 323–31 (1961).[4] IBT is a party to the present proceedings before the CAB and it there has an opportunity to

4. The "standard' provisions have covered such matters as seniority, compensation, dismissal allowances and moving expenses. Employees may have a remedy in the Federal courts to enforce such provisions. Compare Nemitz v. Norfolk and Western Railway Company, 6 Cir., 436 F.2d 841 (1971). In Section 5 of the merger agreement American agreed to:
   ". . . accept reasonable labor protective provisions prescribed by the Civil Aeronautics Board, which may provide, among other things, allowances for certain employees who may be displaced or dismissed as a result of the merger."

show what protective provisions, including the terms of its contracts with Western, should be made a part of any CAB approval. And as to representation rights, IBT has recourse to the National Mediation Board. In short, there are Federal tribunals in which IBT may have determined both the benefit and representation aspects of the dispute.

Given the Delaware statutory duty of a surviving corporation in a merger to assume the liabilities and duties of a constituent, I cannot say as a matter of law that no such duty will survive from the three labor contracts between IBT and Western. Many if not all of such duties may be identified and provided for in rulings by the National Mediation Board, in arbitration proceedings, and in the conditions attached by the CAB to any approval of the merger. But, in light of both § 259 and the contracts to which Western is a party, IBT should not be denied the opportunity to apply to this Court for enforcement (in an appropriate case) of duties imposed elsewhere and/or for a declaration of any duties required of Western under the contracts but which have not been determined elsewhere.

■ In summary, it is my view that Delaware law has a place in the controversy between IBT and the airlines. Contractual duties which survive a merger are enforceable under Delaware law and they are not made less so because those duties arise are under Federal law or because they arise from a collective bargaining agreement. Hence, dismissal of the complaint is not permissible at this time.

\* \* \*

In view of the concusions stated herein it is not necessary to consider other arguments of the parties. Defendants' motion will be denied.