Vaughn **BEALS** et al., Plaintiffs,

v.

**WASHINGTON INTERNATIONAL, INC., et al., Defendants.**

Court of Chancery of Delaware, New Castle County.

Submitted Feb. 16, 1978.

Decided May 10, 1978.

HARTNETT, Vice Chancellor.

In this action plaintiffs are former stockholders of defendant-Formac, Inc. (Formac). They were eliminated from equity participation in Formac as a result of a merger whereby defendant-MLZ, Inc. (MLZ) was merged into Formac. Plaintiffs seek to rescind the merger alleging misstatement of fact in the Proxy Statement in connection with the merger, and that the merger was approved only because of an illegal conspiracy among certain individual defendants who have not been served in this action.

At the time of the merger MLZ was a wholly owned subsidiary of defendant-Washington International, Inc. (Washington). As a result of the merger Washington became the owner of all the stock of Formac. Plaintiffs, in their Complaint, seek both compensatory and punitive damages.

Washington and Formac moved to strike plaintiffs' demand for punitive damages, alleging that this Court does not have jurisdiction to award them.

Formac also moved to quash the service of process on MLZ since it is claimed that MLZ was not in existence when the service of process on MLZ was made.

The two motions will be discussed separately.

Rodman Ward, Jr. and Edward P. Welch, of Prickett, Ward, Burt & Sanders, Wilmington, for plaintiffs.

Edmund N. Carpenter, II, R. Franklin Balotti, and James McC. Geddes, of Richards, Layton & Finger, Wilmington, for defendants.

## THE MOTION TO STRIKE THE CLAIM FOR PUNITIVE DAMAGES

### I

This Court's jurisdiction is primarily based on Article IV, § 10 [1] of the Delaware Constitution. Article IV, § 17 [2] of the Dela-

1. Del.Const. art. IV, § 10 states:
   The Chancellor and the Vice-Chancellor or Vice-Chancellors shall hold the Court of Chancery. One of them, respectively, shall sit alone in that court. This Court shall have all the jurisdiction and powers vested by the laws of this State in the Court of Chancery. In any cause or matter in the Court of Chancery that is initiated by an application to a Judge of that Court, the application may be made directly to the Chancellor or a Vice-Chancellor. Causes or proceedings in the Court of Chancery shall be

decided, and orders or decrees therein shall be made by the Chancellor or Vice-Chancellor who hears them, respectively.

2. Del.Const. art. IV, § 17 states:
   The General Assembly, notwithstanding anything contained in this Article, shall have power to repeal or alter any Act of the General Assembly giving jurisdiction to the former Court of Oyer and Terminer, the former Superior Court, the former Court of General Sessions of the Peace and Jail Delivery, the former

ware Constitution gives the General Assembly authority to confer additional jurisdiction upon this Court but no statute has been enacted conferring upon this Court jurisdiction to impose punitive damages.

It is the law of this State that the jurisdiction vested in this Court by Del.Const. art. IV, § 10 is the same as that which was possessed by the high court of chancery in England at the time of the separation of the colonies. *duPont v. duPont*, Del.Supr., 85 A.2d 724 (1951); *First Nat. Bank of Frankford v. Andrews*, Del.Ch., 28 A.2d 676 (1942); *Glanding v. Industrial Trust Co.*, Del.Supr., 45 A.2d 553 (1945); *Theisen v. Hoey*, Del.Ch., 51 A.2d 61 (1947) and *Delaware Trust Co. v. McCune*, Del.Ch., 80 A.2d 507 (1951).

## II

In order to determine whether this Court has jurisdiction to award punitive damages, therefore, it is first necessary to ascertain whether the high court of chancery in England had such jurisdiction in 1776.

Defendants rely heavily on *Colburn v. Simms*, 2 Hare 543, 67 Eng.Rep. 224 (1843) where the Court held that the high court of chancery in England did not have jurisdiction to order penalties or forfeitures.

In that case, decided in 1843, the Vice Chancellor decided that he did not have the authority to order a delivery up of certain books published in violation of a copyright since delivery up or seizure of the offending books would amount to a forfeiture.

The Court held:

The general rule undoubtedly is that, where a party seeking equitable relief is incidentally entitled to the benefit of a penalty or forfeiture, the Court requires him, as a condition of its assistance, to waive the penalty or forfeiture.

This holding has been quoted with approval in many decisions in this country. See, for example, *Stevens v. Gladding*, 58 U.S. 447, 15 L.Ed. 155 (1854) and *Superior Construction Co. v. Elmo*, 204 Md. 1, 104 A.2d 581 (1954).

Plaintiffs in fact candidly concede that the rule of law that Chancery Court does not have jurisdiction to award punitive damages is the majority rule in this country.

## III

The question of whether this Court has jurisdiction to assess punitive damages has apparently never been considered by this Court in any reported decision.

The question has however been answered in the negative by the U.S. District Court for the District of Delaware. Judge Rodney said in *William Whitman Co. v. Universal Oil Products Co.*, U.S.D.C.Del., 125 F.Supp. 137 at 162 (1954):

This, then, being an equitable action for rescission, I believe the law to be uniform that in the absence of express statutory provisions, a court of equity is without authority to assess exemplary or punitive damages.

Citing *Coca-Cola Co. v. Dixie-Cola Laboratories*, 4th Cir., 155 F.2d 59 (1946), cert. den. 329 U.S. 773, 67 S.Ct. 192, 91 L.Ed. 665; *Taylor v. Ford Motor Co.*, D.C.Ill., 2 F.2d 473 (1924); *U. S. v. Bernard*, 9 Cir., 202 F. 728 (1913).

■ While a ruling of the U.S. District Court is not *stare decisis* to this Court a ruling by the eminent jurist and historian, Judge Richard Rodney, is always entitled to great weight.

This rule was also followed by the District Court of Delaware in *Brady v. Trans World Airlines, Inc.*, U.S.D.C.Del., 196 F.Supp. 504 (1961) aff'd, 3rd Cir., 401 F.2d 87 (1968).

Court of General Sessions, the Superior Court hereby established, the Orphans' Court or the Court of Chancery; in any matter, or giving any power to either of the said courts. The General Assembly shall also have power to confer upon the Superior Court, the Orphans' Court and the Court of Chancery jurisdiction and powers in addition to those hereinbefore mentioned. Until the General Assembly shall otherwise direct, there shall be an appeal to the Supreme Court in all cases in which there is an appeal, according to any Act of the General Assembly, to the former Court of Errors and Appeals or to the former Supreme Court of this State.

## IV

The rationale of these cases denying Chancery's power to award punitive damages is clear. Traditionally and historically the Court of Chancery as the Equity Court is a court of conscience and will permit only what is just and right with no element of vengeance and therefore will not enforce penalties or forfeitures.

In an exhaustive and well reasoned opinion the Maryland Court of Appeals in 1954 reviewed the law in England and America and concluded that a Court of Chancery has never had jurisdiction to impose punitive or exemplary damages in the absence of specific statutory authority. *Superior Const. Co. v. Elmo*, supra, 48 A.L.R.2d 932 (annotation).

■ I therefore hold that Chancery historically and traditionally did not enforce forfeitures or penalties and that this was the rule of law in the high court of chancery in England in 1776 and is therefore the rule in this Court today.

## V

The Delaware cases holding that the Court of Chancery, once having acquired jurisdiction over a controversy may, in appropriate cases, go on to grant complete relief although the relief granted is in the nature of a legal remedy[3], are not inconsistent with this holding. To say that Chancery may award compensatory damages in certain instances is not to say that Chancery may also award punitive damages. *U.S. v. Hart*, Dist.Ct.E.D.Va., 86 F.Supp. 787 (1949); *Superior Const. Co. v. Elmo*, supra.

## VI

Plaintiffs, while conceding that the majority rule of law in this country precludes this Court from awarding punitive damages, cites several minority rule cases which hold that a Court of Chancery may award punitive damages in stockholder derivative suits and urges this Court to follow that minority rule.

The plaintiffs' argument is consistent with the position taken by the author of the annotation in 67 A.L.R.3rd 350 who argues that punitive damages should be awarded in an appropriate instance in stockholder derivative actions because to do so would be in conformity with modern concepts of what is equitable. The author of that note, however, concedes that the majority of cases hold that Equity does not award punitive damages. He states that "there seems to be a clear trend towards allowing such damages in equity, *especially where the same court administers both legal and equitable relief*" (emphasis added). The consolidation of law and equity does not exist in Delaware, however, where their separation is still vigorously maintained.

The author of the note cites only two cases which have held that punitive damages may be recovered in stockholder derivative actions. The two cases, *Charles v. Epperson & Co.*, 258 Iowa 409, 137 N.W.2d 605 (1965) and *Holden v. Construction Machinery Co.*, Iowa Supr., 202 N.W.2d 348 (1972), both arose in Iowa, a state which has combined its law and equity courts.

Neither case discussed the philosophical reasons why Chancery, traditionally, has not awarded punitive damages.

## VII

For this Court to ignore the rule of law in *Colburn v. Simms*, supra, and the rule announced by the clear majority of cases decided in this country (see 48 A.L.R.2d 932 and 67 A.L.R.2d 350) would be for this Court to take it upon itself to assume new jurisdiction. While this Court may sometimes find it necessary to broaden its jurisdiction in order to fulfill its historical role of granting relief where no adequate relief is available at law, especially if constitutional rights are involved or an injustice would otherwise result, it should not on its own volition assume new jurisdiction to impose penalties it could not formerly impose.

---

3. See *Wilmont Homes v. Weiler*, Del.Supr., 202 A.2d 576 (1964) and *Getty Refining & Market-*ing Co. v. Park Oil, Inc., Del.Ch.N.C.Co., 385 A.2d 147 (1978).

The purpose of awarding punitive or exemplary damages is to impose a penalty or deterrent to prevent conduct which is deemed to be bad or harmful. *Northwestern Nat. Cas. Co. v. McNulty*, C.A.Fla., 307 F.2d 432 (1962). See *Reynolds v. Willis*, Del.Supr., 209 A.2d 760 (1965); *Riegel v. Aastad*, Del.Supr., 272 A.2d 715 (1970); and *Walczak v. Healy*, Del.Super., 280 A.2d 728 (1971). This is clearly a policy decision. See Dession: *Sanctions, Law and Public Order*, 1 Vand.L.R. 8 (1947); Toeusch: *Sanctions in a Democratic Society*, 2 J.Soc. Phil. 195 (1937).

There are three separate but equal branches of government. One branch of government should not encroach on the other. Del.Const. art. III, § 1; *Opinion of the Justices*, Del.Supr., 380 A.2d 109 (1977); and cases cited therein; *duPont v. duPont*, supra. It is the Legislative Branch which should make the policy decision that a certain course of conduct, not previously cause for the imposition of punitive damages, should now be penalized beyond the awarding of compensatory damages. This Court, in the absence of such Legislative finding and action should not take it upon itself to change a centuries-old limitation on its jurisdiction and undertake to assess damages in excess of what is necessary to make an injured party whole.

If this Court is to impose penalties in stockholder derivative suits, it is for the General Assembly to so decide. This Court should not assume this mantle on its own volition.

The Motion to Dismiss that portion of the Complaint which seeks punitive or exemplary damages is granted.

So ordered.

### THE MOTION TO QUASH SERVICE OF PROCESS

### VIII

Formac's motion to quash the service of process on MLZ is based on the argument that since MLZ was merged into Formac prior to the commencing of the suit, no service of process on MLZ was legally possible.

I have some conceptual problems with the reason for the Motion. The Motion is brought by Formac, not MLZ, the corporation purportedly served. Since Formac is the corporation into which MLZ was merged, it is liable for all the debts, liabilities and duties of MLZ. 8 *Del.C.* § 259. It is therefore difficult to understand why Formac seeks to have MLZ removed as a party. Brushing aside that speculation, however, the issue presented is whether a corporation which has been merged into another corporation can be served with process after the merger, even if the action seeks a rescission of the merger.

Plaintiffs contend that since their Complaint charges that the merger between MLZ and Formac was accomplished in violation of Delaware law, and asks for rescission of the merger, the basic vitality of the merger is questionable. Plaintiffs therefore submit that an arguably invalid merger should not result in even a temporary extinguishment of a constituents' corporate existence and amenability to service of process.

I agree that plaintiff, as a practical matter and with an abundance of caution, did the proper thing in joining MLZ as a defendant since, otherwise, if plaintiff prevails, MLZ which will then be resurrected, might argue that it had no notice of the proceedings and cannot be bound by them.

### IX

Formac however cites substantial case law technically supporting the proposition that in Delaware, the separate corporate existence of a constituent corporation ceases upon merger into another corporation. In *Argenbright v. Phoenix Finance*, Del.Ch., 187 A. 124 (1936), an agreement by which seven corporations transferred all their assets to Phoenix Finance was challenged as an invalid merger. Defendants asserted that the agreement involved mere sales of assets, as opposed to a merger. The Court discussed the law of mergers as follows:

When a consolidation or merger has taken place under the statute, the old corporations have their identity absorbed into that of the new corporation or the one into which they were merged.

Similarly, in *Braasch v. Goldschmidt*, Del. Ch., 199 A.2d 760 (1964), where the plaintiff sought cancellation of a merger on grounds of invalidity, this Court held as follows:

8 *Del.C.* § 253(b) provides that upon the recording of the certificate of ownership and merger "all of the estate, property, rights, privileges and franchises of the corporation or corporations which did not survive the merger shall vest in and be held and enjoyed by the surviving corporation . . ." It is thus provided that upon a merger under § 253 "the old corporations have their identity absorbed into . . . the one into which they were merged." (citation omitted) By virtue of the merger here involved the derivative rights asserted passed to the surviving corporation . . ..

See FOLK, The Delaware General Corporation Law § 259, p. 365. See also, *Sevits v. McKiernan-Terry Corp.*, S.D.N.Y., 264 F.Supp. 810 (1966); *Damon Alarm v. American District Telegraph*, S.D.N.Y., 304 F.Supp. 83 (1969); and *U.S. v. Borden*, N.D. Ill., 28 F.Supp. 177, modified 308 U.S. 188, 60 S.Ct. 182, 84 S.Ct. 181 (1939).

## X

Even assuming that plaintiffs' charges regarding the invalidity of the merger can be established after a trial on the merits, Formac maintains that the question of the efficacy of service of process should be approached from a procedural rather than a substantive point of view. Accordingly, Formac contends that for procedural purposes at least, a constituent corporation ceases to exist upon merger, even if such merger is eventually rescinded after a trial on the merits.

I have found nothing in the case law which contradicts Formac's position. Indeed, in *Fitzsimmons v. Western Airlines*, Del.Ch., 290 A.2d 682 (1972), the Teamsters sought declaratory judgment to the effect that bargaining agreements made with Western survived a merger of Western in American Airlines. Although the merger had been approved by stockholders of both companies, at the time of the suit, the merger still required final approval by the Civil Aeronautics Board and the President of the United States. In spite of such pendency, this Court held as follows:

It is thus a matter of statutory law that a Delaware corporation may not avoid its contractual obligations by merger; those duties "attach" to the surviving corporation and may be "enforced against it." In short, the survivor must assume the obligations of the constituent.

## XI

In resolving questions centering on corporate existence or dissolution, it should be kept in mind that corporations exist only by legislative act. *International Pulp Equipment v. St. Regis Kraft*, D.C. Del., 54 F.Supp. 745 (1944). Since by statute, corporate existence is terminated on the date of merger, *U.S. v. Borden*, N.D. Ill., 28 F.Supp. 177 (1939), a corporation ceases to exist on merger for all purposes, including service of process, unless the legislature provides otherwise. *Sevits v. McKiernan-Terry*, S.D.N.Y., 264 F.Supp. 810 (1966).

## XII

Lastly, plaintiffs have attempted to argue that Formac is estopped to assert MLZ's non-existence because of MLZ's appearance in this action. In *Damon Alarm v. American District Telegraph*, S.D.N.Y., 304 F.Supp. 83 (1969), a defendant company moved to dismiss a complaint on the ground that it had gone out of existence as a result of a statutory merger. The Court indirectly addressed the question of a non-existent company's capacity to move for dismissal as follows:

Consequently, *the moving defendant no longer exists* and the action cannot be maintained against it. (emphasis added)

For the reasons stated above, the motion to quash the service of process on defendant MLZ, Inc. is granted.

So ordered.